UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DANIELLE BELL,

      Plaintiff,

                                      File No. 1:09-CV-970

v.

                                      HON. ROBERT HOLMES BELL

DONALD PORTER, in his individual
capacity, and CITY OF LANSING,

      Defendants.
                                      /

## **OPINION**

This action alleging the use of excessive force during a police encounter is before the Court on a motion for summary judgment filed by Defendants City of Lansing and Lansing police officer Donald Porter. (Dkt. No. 11.) For the reasons that follow, Defendants' motion will be granted in part and denied in part.

### I.

Plaintiff Danielle Bell is a 29-year-old double amputee with two prosthetic legs. On October 27, 2007, Plaintiff and her sister Laura Bell were passengers on a Capital Area Transportation Authority ("CATA") bus in the City of Lansing, Michigan. Before the bus left the main terminal, the driver asked a juvenile female passenger who had been yelling out of the bus window to stop yelling or to get off the bus. (D. Bell Dep. 32.) The girl stopped yelling, but continued to talk loudly to her two male companions. (*Id.* at 35.) The bus driver

stopped the bus, and ordered the girl off the bus. (*Id.*) As the girl walked toward the exit, she began calling the bus driver names. The bus driver grabbed her and shoved her. (*Id.* at 35-36.) Plaintiff stood up and told the bus driver she could not do that to somebody else's child. (*Id.* at 36.) Plaintiff's sister offered to let the juvenile use her telephone. (*Id.* at 38.) The bus driver called to request police assistance. (*Id.* at 40.)

Officer Porter was dispatched to the 100 block of North Grand Avenue to respond to the bus driver's complaint of disruptive individuals on the CATA bus. (Porter Dep. 22.) The bus driver advised Porter that she wanted the juvenile girl, her two male companions, Plaintiff, and Plaintiff's sister off the bus. (D. Bell. Dep. 41; Porter Dep. 23.) Porter witnessed a loud, heated verbal dispute between the bus driver and the group. (Porter Dep. 24.) Based on the tone of the discussion, Porter determined that it would be best if the group got off the bus and took up their grievances with the CATA administration. (*Id.* at 25-26.) Porter directed the five individuals to get off the bus. (D. Bell. Dep. 43.) As the others were getting off the bus, Plaintiff was still trying to get the bus driver's name. (*Id.*) When Porter told Plaintiff that he would get the information for her, she started to get off the bus. According to Plaintiff, as she turned around to step backwards off the bus, Porter put his hands out and pushed her chest, causing her to fall backwards. (D. Bell Dep. 50.)

Plaintiff filed this action alleging two claims against Defendant City of Lansing and Defendant Porter: Count I, deprivation of federal civil rights pursuant to 42 U.S.C. § 1983 based on the use of excessive force, and Count IV, violation of the Michigan Persons With

Disabilities Civil Rights Act ("PWDCRA"), Mich. Comp. Laws § 37.1101, *et seq*. Plaintiff has alleged two additional claims against Defendant Porter: Count II, gross negligence, and Count III, assault and battery. Defendants have moved for summary judgment on all claims.

## II.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendants carry their burden of showing there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the Court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such

that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

## III.

### A. Excessive Force Claim

In Count I of her complaint, Plaintiff asserts an excessive force claim under 42 U.S.C. § 1983 against Officer Porter and the City .

1. Officer Porter

Defendants contend that Officer Porter is entitled to summary judgment on Plaintiff's excessive force claim because he did not violate Plaintiff's Fourth Amendment rights or, in the alternative, because he is entitled to qualified immunity.

Plaintiff's excessive force claim is governed by the Fourth Amendment's prohibition against unreasonable seizures of the person. *Graham v. Connor*, 490 U.S. 386, 394 (1989). In determining whether a constitutional violation based on excessive force has occurred, the Sixth Circuit applies "the objective-reasonableness standard." *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010). In evaluating the reasonableness of the force used, "[r]elevant considerations include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007) (quoting *Graham*, 490 U.S. at 396). "In addition, the Sixth Circuit has found that 'the definition of reasonable force is partially dependent on the demeanor of the suspect.'"

*Marvin v. City of Taylor*, 509 F.3d 234, 245 (6th Cir. 2007) (quoting *Solomon v. Auburn Hills Police Dept.*, 389 F.3d 167, 174 (6th Cir. 2004)). Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, "its proper application requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396.

Defendants contend that Officer Porter's action was objectively reasonable under the circumstances because Porter stuck out his arm instinctively to create reactive space when Plaintiff unexpectedly turned around to face him before exiting the bus:

> When you get to the rear door of the bus, there was a single step down and then – before ground level. She kind of got to the point – she got to that point, she stopped and immediately turned around and was facing face to face with me. But she was still the whole time being very loud and yelling and arguing with the bus driver, and I didn't know what she was doing. I mean, 'cause she stopped, she spun around and was right in my face, kind of, you know, being – yelling. And I didn't know at that point if she was mad at me, you know, because she was upset about having to get off the bus. I didn't know if she was going to start taking some of that out on me or what. I just kind of stuck my arm up in kind of – in like a stiff arm type motion and, you know, to allow myself a reactionary gap between her and I because I didn't know what was going – I didn't know what was happening. And I said, "Get off the bus."

(Porter Dep. 36.) Porter testified that he did not intend to push Plaintiff off the bus, and he did not expect Plaintiff to lose her balance or fall. (*Id*. at 43.) He merely wanted to provide space between the two of them so that he could respond to her next actions. (*Id.* at 42.) In support of his reaction, Porter explains that Plaintiff did not initially obey his directions to get off the bus, but instead continued to argue with the bus driver. (Porter Dep. 32.) According to Porter, he did not know that Plaintiff was disabled until after she fell, and had

5

he known of her disability, he would have allowed her more space and more time to get off the bus. (Porter Dep. 41, 45.)

Plaintiff has given a very different account of what happened. Plaintiff described Officer Porter's actions not as a single straight-arm, but as a two handed push against her chest. (D. Bell Dep. 50.) Plaintiff testified that before the push, both she and her sister told the officer that she was handicapped:

> I did turn around and go backwards. Like I said, my sister was the last one off, and the officer stated once again, "Get off the bus," you know, as she's getting off. And then I turned around to get off, and my sister was on the ground and she said, "Give her a minute. She's handicapped." And then just to make sure he heard her, you know, I said it to let him know I was handicapped. I said, "I'm handicapped." And that's when he just pushed me off the bus with – just pushed me off the bus.

(*Id.* at 47-48.) Plaintiff's sister, Laura Bell, agreed that "Officer Porter would have heard both Danielle and I say she was handicapped before he pushed her . . . ." (Dkt. No. 17, L. Bell Aff. ¶ 12.) According to Laura Bell, Officer Porter "would have seen how she walked differently do [sic] to 2 prosthetic legs." (*Id.*) Laura Bell also stated that "at no time did Danielle stop suddenly and turn around since she is handicapped and unable to move quickly." (*Id.* at ¶ 11.) Plaintiff also testified that she never threatened, disrespected, or yelled at Officer Porter. (D. Bell. Dep. 69-71.)

Viewing the facts in the light most favorable to Plaintiff, the Court concludes that there are genuine issues of material fact that preclude the entry of summary judgment. There are factual disputes as to whether Officer Porter simply put out a straight arm to gain reactive

6

space or pushed Plaintiff with two hands, whether Officer Porter knew Plaintiff was handicapped, whether Plaintiff stopped suddenly, and whether it was objectively reasonable for Officer Porter to have some apprehension for his own safety. A jury could reasonably find that Officer Porter's conduct was not objectively reasonable under the circumstances. Accordingly, the Court cannot find, as a matter of law, that Officer Porter did not use excessive force.

Defendants contend, in the alternative, that Officer Porter is entitled to qualified immunity. Qualified immunity shields government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Binay*, 601 F.3d at 646 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity will often operate to protect officers from the sometimes hazy border between excessive and acceptable force." *Miller v. Sanilac County*, 606 F.3d 240, 253-54 (6th Cir. 2010) (quoting *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 174 (6th Cir. 2004) (internal quotations and citations omitted)). "An officer should be entitled to qualified immunity if he made an objectively reasonable mistake as to the amount of force that was necessary under the circumstances with which he was faced." *Id.* (citing *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002)).

An officer's qualified immunity should be recognized on summary judgment "unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a

7

constitutional right; and (2) the right was clearly established." *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009) (citing *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir.2008)). "The issue of qualified immunity may be submitted to a jury only if 'the legal question of immunity is completely dependent upon which view of the [disputed] facts is accepted by the jury.'" *Miller*, 606 F.3d at 247 (quoting *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007)).

As noted above, there are material factual disputes concerning Officer Porter's actions. Whether or not Officer Porter is entitled to qualified immunity is completely dependent upon which view of the disputed facts is accepted by the jury. The facts of record would permit a reasonable jury to find that Officer Porter violated Plaintiff's constitutional right to be free from excessive force. Defendants have not argued that this right was not clearly established. Accordingly, Officer Porter is not entitled to summary judgment on the basis of qualified immunity.

2. City of Lansing

Plaintiff's § 1983 claim against the City of Lansing is based upon its allegation that the City, through the Lansing Police Department

> has a policy or practice of engaging in the systematic deprivation of civil rights of citizens and/or arrestees by, among other things, a failure to train or supervise police officers in the proper use of force, accommodation of handicap persons and/or the constitutional rights/liberties of citizens subject to legitimate police activity which was the moving force behind plaintiff's injury.

(Compl. ¶ 21.)

A municipality is not subject to liability pursuant to § 1983 on a theory of respondeat superior. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). In *Monell* and subsequent cases, the Supreme Court has "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A municipality may be liable for a failure to train where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Moldowan v. City of Warren*, 578 F.3d 351, 393 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 3504 (2010) (citing *City of Canton*, 489 U.S. at 390). In order to sustain her claim against the municipality, "the plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404. "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

Defendants contend they are entitled to summary judgment on Plaintiff's claim against the City because Plaintiff cannot identify any specific policy or custom of the City or a lack

of training which was a driving force behind this incident which would constitute deliberate indifference.

Defendants have presented evidence that the City of Lansing has a use of force policy, that Officer Porter was trained in the use of force policy, and that Officer Porter has not been the subject of any disciplinary sanctions relative to allegations of use of excessive force. (Porter Dep. 8-12; Def. Ex. 3, Use of Force Policy.)[1] In her response to Defendants' motion for summary judgment, Plaintiff has not presented any evidence to rebut Defendants' argument and evidence regarding the adequacy of its policies and training on the use of force. The City is accordingly entitled to judgment on Plaintiff's constitutional claim based on the City's policies and training regarding the use of force.

Instead, Plaintiff focuses on the adequacy of the City's training of its officers in dealing with disabled individuals. Plaintiff contends that there are material issues of fact regarding the adequacy of the municipality's policies and training program regarding the civil rights of disabled citizens which should ultimately be determined by the trier of fact. The only evidence Plaintiff has cited in support of this contention is Officer Porter's testimony that he received training with respect to the Americans with Disabilities Act, but that it dealt mostly with people with mental disabilities. (Porter Dep. 13.) Officer Porter did not know if he had received any "real training" regarding the duty to accommodate a disabled person,

---

[1] The policy provides in pertinent part that officers "may use such reasonable force as may be, or reasonably appears to be, necessary to protect themselves or others to carry out their lawful duties; but should use the amount of force that is proportionate to the level of demonstrated subject resistance." (Def. Ex. 3, Use of Force Policy, ¶ VII(B).)

and he could not recall receiving any specific training with respect to the provisions of the PWDCRA or the ADA. (*Id*. at 14-16.)

"The inadequacy of police training only serves as a basis for § 1983 liability 'where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Miller*, 606 F.3d at 255 (quoting *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008)). To establish deliberate indifference toward the rights of disabled individuals, "the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Miller*, 606 F.3d at 255 (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)).

Defendants have presented evidence that all officers hired by the City of Lansing are certified under the Michigan Commission on Law Enforcement Standards ("MCOLES"). Those standards include training in laws pertaining to civil rights, including laws relating to persons with disabilities. (Def. Ex. 4, ¶¶ II-B-2.3, II-B-2.4.) Plaintiff has presented no evidence the City has ignored a history of abuse of disabled individuals by Officer Porter or by any of its other officers, or that the City was on notice that the training in this particular area was deficient and likely to cause injury. Because Plaintiff has not presented evidence that the City was on notice that its training regarding the rights of disabled citizens was inadequate, Plaintiff's evidence that Officer Porter did not recall having received training in this area is not sufficient to show that the City was deliberately indifferent to the rights of

11

disabled citizens. Defendant City of Lansing is accordingly entitled to judgment on Plaintiff's excessive force claim against it.

## B. Gross Negligence Claim

Defendants contend that Plaintiff's gross negligence claim against Officer Porter should be dismissed because it is subsumed into her assault and battery claim. In support of this contention Defendants rely on case law indicating that "Michigan 'has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence.'" *Miller*, 606 F.3d at 254 (quoting *VanVorous v. Burmeister*, 687 N.W.2d 132, 143 (Mich. Ct. App. 2004)).

In *VanVorous*, the plaintiff's gross negligence claim was based on her allegation that the defendants "breached the duty of care they owed to Mr. VanVorous by utilizing excessive force to subdue or control Mr. VanVorous." *Id.* at 143. The court determined that the plaintiff's claim of gross negligence was "fully premised on her claim of excessive force," and accordingly granted summary disposition in favor of the defendants because Michigan courts reject "attempts to transform claims involving elements of intentional torts into claims of gross negligence." *Id.*

The *VanVorous* court relied on *Smith v. Stolberg*, 586 N.W.2d 103 (Mich. Ct. App. 1998), where the plaintiff couched his negligence claim in terms of "breach of defendant's duty 'not to engage in disruptive behavior, not to speak to opposing parties in a case in which defendant is engaged as counsel, and not to touch or strike members of the opposite parties'

family.'" *Id.* at 104-05. The *Smith* court determined that the plaintiff was essentially alleging an intentional, offensive touching, and accordingly granted summary disposition in favor of defendants with regard to plaintiff's negligence claim. *Id.* at 105. *See also Sudul v. City of Hamtramck*, 562 N.W.2d 478, 479 (Mich. Ct. App. 1997) (holding that the tort of assault and battery by gross negligence does not exist).

Plaintiff contends her allegations of gross negligence are independent and distinct from her allegations of excessive force, and therefore do not fall within the rule set forth in *VanVorous*. Plaintiff's excessive force claim is based on allegations that Officer Porter breached the following duties:

> a. To treat plaintiff with respect and dignity as may be consistent with her security, and legitimate law enforcement activity.
>
> b. To avoid foreseeable injury to plaintiff, while investigating or pursuing legitimate police activity.
>
> c. To avoid conduct or a failure to act that is so reckless that it demonstrates a substantial lack of concern for whether an injury will result.

(Compl. ¶ 27.)

It appears to the Court that although Plaintiff's excessive force claim is based on the same incident as her assault and battery claim, she has adequately alleged an alternative basis for the claim that does not rely on an intentional, offensive touching. Accordingly, her claim is not barred by *VanVorous*, and Officer Porter is not entitled to summary judgment on Plaintiff's gross negligence claim.

## C. Assault and Battery Claim

Defendants contend that Plaintiff's assault and battery claim against Officer Porter should be dismissed on the basis of governmental immunity and the standards enunciated in *Odom v. Wayne County*, 760 N.W.2d 217 (Mich. 2008).

Plaintiff's assault and battery claim is analogous to her § 1983 excessive force claim, in that she can only recover if Officer Porter's conduct was objectively unreasonable. *See VanVorous*, 687 N.W.2d at 142 (noting that under Michigan law, an assault and battery claim against a police officer requires proof that the officer's actions "were not justified because they were not objectively reasonable under the circumstances"). Accordingly, the same issues of fact identified with respect to Plaintiff's excessive force claim preclude entry of summary judgment on Plaintiff's assault and battery claim.

Neither is Officer Porter entitled to summary judgment on the basis of governmental immunity. To be entitled to governmental immunity for an intentional tort, Officer Porter must establish that "he was acting in the course of his employment and at least reasonably believed that he was acting within the scope of his authority, that his actions were discretionary in nature, and that he acted in good faith." *Miller*, 606 F.3d at 254 (citing *Odom*, 760 N.W.2d at 228). Good faith is defined as "without malice." *Id*. (quoting *Odom*, 760 N.W.2d at 225).

There can be no dispute that Porter was acting within the course of his employment, that he reasonably believed he was acting within the scope of his authority, and that his

actions were discretionary in nature. However, viewing the evidence in the light most favorable to Plaintiff, the Court is satisfied that there is a dispute of fact as to whether Officer Porter acted in good faith. Accordingly, Defendants' motion for summary judgment on the assault and battery claim will be denied.

### D. Persons with Disabilities Civil Rights Act Claim

Plaintiff alleges in Count IV that Officer Porter violated her rights under the PWDCRA by failing to provide reasonable accommodation for her disabilities and allow her more time to exit the bus. Plaintiff alleges that the City violated her rights under the PWDCRA by failing to train police officers to accommodate persons with disabilities.

The PWDCRA prohibits discrimination against individuals because of their disabilities. *Peden v. City of Detroit*, 680 N.W.2d 857, 863 (Mich. 2004). The PWDCRA specifically guarantees the opportunity obtain full and equal utilization of "public services" without discrimination because of a disability and requires a person to accommodate a person with disabilities for purposes of public services unless accommodation would impose an undue hardship. Mich. Comp. Laws § 37.1102(1), (2). A city and a police department are "public services" under the PWDCRA. *See Bertrand v. City of Mackinac Island*, 662 N.W.2d 77, 80 (Mich. Ct. App. 2003) (noting that the PWDCRA's definition of a "public service" includes a city); *Gazette v. City of Pontiac*, 536 N.W.2d 854, 858 (Mich. Ct. App. 1995) (noting that a police department is a public service under the HCRA, the predecessor to the PWDCRA).

Defendants contend that Plaintiff's PWDCRA claim should be dismissed because Office Porter did not deny Plaintiff public service because of her disability, and because a failure to train claim against City is not cognizable under the PWDCRA.

1. Officer Port

Plaintiff has alleged that Officer Porter was aware of her disabilities and that he nevertheless failed to provide additional time for her to exit the bus. (Compl. ¶¶ 42, 45.)[2]

Defendants contend that Plaintiff cannot maintain a PWDCRA claim against Officer Porter because Officer Porter raised his arm instinctively based on Plaintiff's proximity to him and not because of Plaintiff's disability. As noted above in connection with Plaintiff's excessive force claim, there is a material dispute of fact as to what Officer Porter did and why he did it. Accordingly, Officer Porter is not entitled to summary judgment on this claim.

2. Defendant City of Lansing

With respect to the City of Lansing, Plaintiff contends that the City's failure to train or set policy was a moving force behind Officer Porter's deliberate indifference to plaintiff's

---

[2]Plaintiff alleges in Count IV that Officer Porter violated her rights under the PWDCRA as follows:

> That defendant's failure and/or refusal to provide additional time for plaintiff to exit the bus or otherwise accommodate plaintiff's disability violated plaintiff's protected liberty interest in being reasonably accommodated during the police encounter.

(Compl. ¶ 45.)

16

rights.[3]

Defendants contend that a failure to train claim against City is not cognizable under the PWDCRA. In support of this contention Defendants rely on *Dillery v. City of Sandusky*, 398 F.3d 562 (6th Cir. 2005), where the Sixth Circuit rejected a failure to train claim under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 et seq. *Id.* at 568.

*Dillery* did not construe the PWDCRA. Nevertheless, the PWDCRA "substantially mirrors the ADA," and generally requires the same proofs. *Cotter v. Ajilon Servs.*, 287 F.3d 593, 597 (6th Cir. 2002); *see also Mitchell v. City of Kalamazoo*, No. 4:05-CV057, 2006 WL 3063433, at *6 (W.D. Mich. Oct. 26, 2006) (Enslen, J.) (quoting *Cotter*). The PWDCRA "forbids similar types of discriminatory activity as those proscribed by the ADA." *Johnson-Bey v. Brentwal LLC*, No. 4:06-CV-67, 2007 WL 2021861, at *5 (W.D.Mich. July 6, 2007) (Quist, J.). "The two acts have the same purpose and use similar definitions and analyses, and Michigan courts rely on the ADA in interpreting the PWDCRA." *In re Ozark*, No. 256851, 2004 WL 2913642, at *3 (Mich. Ct. App. Dec. 16, 2004). Because there is no case law in Michigan addressing a failure to train claim under the PWDCRA, reference to the ADA is appropriate.

---

[3]Plaintiff alleges in Count IV that Defendant City violated her rights under the PWDCRA as follows:

> That defendant City of Lansing's failure to train or supervise its police regarding the need to accommodate persons with disabilities according to the provisions of state law is a policy or practice which was a moving force in the violation of plaintiff's civil right under state law.

(Compl. ¶ 46.)

The Sixth Circuit explained in *Dillery* that to make out a prima facie case under the ADA, a plaintiff must establish that "'(1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability.'" *Id.* at 567 (quoting *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003)). The Sixth Circuit held that the failure of the City of Sandusky to train its employees about the ADA affected all disabled persons, not just the plaintiff, and that the plaintiff was accordingly unable to demonstrate that the city "intentionally discriminated against her specifically" by failing to train its employees. *Id.* at 568. "'[A]cts and omissions which have a disparate impact on disabled persons in general [are] not specific acts of intentional discrimination against [the plaintiff] in particular.'" *Id.* (quoting *Tyler v. City of Manhattan*, 118 F.3d 1400, 1403 (10th Cir. 1997)).

A prima facie case of discrimination under the PWDCRA similarly requires a plaintiff to show that she has been the subject of intentional discrimination. *See Bachman v. Swan Harbour Ass'n*, 653 N.W.2d 415, 436 (Mich. Ct. App. 2002). A failure to train on the requirements of the PWDCRA has a disparate impact on disabled persons in general and is not a specific act against Plaintiff in particular. Plaintiff's claim that the City failed to failure to train its police regarding the need to accommodate persons with disabilities is accordingly insufficient to state a claim under the PWDCRA.

## IV.

For the reasons stated herein, Defendants' motion for summary judgment will be granted in part and denied in part. The motion will be granted as to all claims against the City of Lansing, and denied as to all claims against Officer Porter.

An order consistent with this opinion will be entered.


Dated: September 9, 2010                      /s/ Robert Holmes Bell
                                                                 ROBERT HOLMES BELL
                                                                  UNITED STATES DISTRICT JUDGE